# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| LANIER HYLTON,<br><br>　　　　　*Plaintiff*,<br><br>　　v.<br><br>MELVIN WATT, Director, Federal Housing<br>Finance Agency,<br><br>　　　　　*Defendant*. | Civil Action No. 17-2023 (RDM) |

## MEMORANDUM OPINION AND ORDER

Lanier Hylton, proceeding *pro se*, alleges that the Federal Housing Finance Agency ("FHFA") discriminated against him based on his race, age, and disability in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act of 1967 ("ADEA"), and the Rehabilitation Act of 1973. With respect to each of these claims, moreover, Hylton relies on both a disparate treatment and disparate impact theory of liability. The FHFA, in turn, moves to dismiss all of Hylton's claims, arguing that the complaint lacks sufficient detail to state a claim. Dkt. 4. For the reasons stated below, the Court concludes that Hylton has, in effect, moved to amend or to supplement his complaint in his opposition brief and that, with the benefit of the additional detail he has provided, his disparate treatment claims survive the FHFA's motion to dismiss. His disparate impact claims, however, fail to clear this modest threshold. The Court will, accordingly, **GRANT** in part and **DENY** in part the FHFA's motion to dismiss.

# I. BACKGROUND

Lanier Hylton has worked for the Department of Housing and Urban Development for approximately 25 years. Dkt. 1 at 3 (Compl. ¶ 9). On October 3, 2010, he filed an application for the position of Ombudsman with the FHFA, a vacancy posted through a public announcement. *Id.* at 3 (Compl. ¶ 10). Hylton, who was 55 years old, African-American, and paraplegic, Dkt. 6-1 at 34, applied for the position under "Schedule A," Dkt. 1 at 3 (Compl. ¶ 10), an excepted service hiring process for federal employees with disabilities, Dkt. 6-1 at 21. He alleges that the FHFA discriminated against him by evaluating his application in a competitive process along with non-disabled candidates, Dkt. 6 at 8, and then, once Hylton was in the pool of competitive applicants, by giving him "less favorable treatment than it would have given an identical applicant without a disability," *id.* at 9. Specifically, Hylton alleges that his application for the Ombudsman position received a score of 94 out of 100 from the Office of Personnel Management but that, despite his rating, he was not selected for an interview while two individuals with scores of 94 and 88, respectively, advanced to the second round of the application process. *Id.* at 10; *see also* Dkt. 6-1 at 40–41.

At some point after the hiring process began, but before it was completed, the FHFA underwent a "major agency-wide reorganization" and, ultimately, none of the candidates who applied through the vacancy announcement was hired as Ombudsman. Dkt. 6-1 at 41. Instead, the FHFA re-assigned an existing "Agency Executive" to fill the position. Dkt. 1 at 5 (Compl. ¶ 15). Hylton alleges that the FHFA "use[d] [this] personnel procedure to re-assign an existing Agency Executive," *id.*, in order "to circumvent his selection for the position of Ombudsman," Dkt. 6-1 at 39.

On September 21, 2011, Hylton filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging that "he was discriminated against on the basis of his race (African-American), age [55], and/or disability (Paraplegic/Wheelchair)." *Id.* at 34; Dkt. 1 at 8 (Compl. Ex. A). After the EEOC accepted his complaint for investigation, an administrative judge ruled for the FHFA on summary judgment, and Hylton appealed the administrative judge's decision to the EEOC's Office of Federal Operations ("OFO"). *Id.* On June 29, 2017, the OFO affirmed the administrative judge's determination that Hylton failed to establish that he had been "discriminated against by [the FHFA] as alleged," and it notified Hylton of his right to file a civil action within 90 days of receipt of the OFO decision. *Id.* at 9–10. Hylton timely commenced this suit on October 2, 2017. Dkt. 1.

## II. LEGAL STANDARD

On a motion to dismiss for failure to state a claim, the Court must "treat 'the complaint's factual allegations as true'" and must grant the plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Brown v. Whole Foods Mkt. Grp. Inc.*, 789 F.3d 146, 150 (D.C. Cir. 2015) (quoting *Atherton v. D.C. Office of Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009)). Although "detailed factual allegations" are not necessary, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). While the Court need not accept as true either a "legal conclusion couched as a factual allegation" or an inference drawn by the plaintiff "if such inference is unsupported by the facts set out in the complaint," *Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006) (citations and internal quotation marks omitted), a claim is "plausible" if the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged," *Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 68 (D.C. Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678).

## III. ANALYSIS

Hylton asserts—or, at least, seeks to assert—disparate treatment and disparate impact claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.*, and the Rehabilitation Act of 1973, 29 U.S.C. § 791 *et seq.*[1] According to the FHFA, he has failed to satisfy the minimal pleading requirements for doing so. The Court will first address Hylton's disparate treatment claims and will then turn to his disparate impact claims.

## A. Disparate Treatment

The FHFA argues that Hylton's complaint lacks sufficient detail to state a claim under Title VII, the ADEA, or the Rehabilitation Act. For disparate treatment claims brought in the

---

[1] On the first two pages of his complaint, Hylton also cites the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12112(a). Later in the complaint—and, in particular, in the sections on "remedies" and "relief"—he cites only Title VII, the ADEA, and the Rehabilitation Act. Because the Rehabilitation Act "constitutes 'the exclusive remedy for federal employees alleging disability discrimination,'" *Williams v. Brennan*, 285 F. Supp. 3d 1, 7 (D.D.C. 2017) (quoting *Welsh v. Hagler*, 83 F. Supp. 3d 212, 222 (D.D.C. 2015)) and "[c]laims and defenses under the two statutes are virtually identical," *Harrison v. Rubin*, 174 F.3d 249, 253 (D.C. Cir. 1999), the Court will construe the complaint to allege a claim for disability discrimination under the Rehabilitation Act, and not the ADA.

Hylton further asserts that the FHFA "failed to follow Congressional[ly] established "[a]ffirmative [a]ction [p]lan (AAP) requirements" as "required" under the Rehabilitation Act of 1973; "President Obama ['s] Executive Order 13548;" Section 342 of the Dodd-Frank Act; and "Schedule A Hiring Authority for [d]isabled [individuals]." Dkt. 1 at 4 (Compl. ¶ 13). In response, the FHFA argues that Hylton cannot bring suit under Schedule A, because it is "optional;" cannot bring suit under the "Dodd-Frank Act," because it does not mandate selection procedures; and cannot bring suit under the Executive Order, because it does not create any legally enforceable private rights. *See* Dkt. 10 at 4–6. Read in context, however, Hylton's allegations regarding the affirmative action plans do not assert separate causes of action but, rather, constitute "evidence of discriminatory intent." Dkt. 6 at 9.

absence of direct evidence of discrimination, "[a] single analytical framework applies" under all three statutes: the familiar burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Etokie v. Duncan*, 202 F. Supp. 3d 139, 148 (D.D.C. 2016), *aff'd sub nom. Etokie v. DeVos*, No. 16-5243, 2017 WL 3725634 (D.C. Cir. May 31, 2017). "Under this test, '[a] plaintiff makes out a *prima facie* case of disparate-treatment discrimination by establishing that: (1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination.'" *Achagzai v. Broad. Bd. of Governors*, 170 F. Supp. 3d 164, 180–81 (D.D.C. 2016) (quoting *George v. Leavitt*, 407 F.3d 405, 412 (D.C. Cir. 2005)). One way for a party to raise an inference of discrimination is to show that the plaintiff "was treated differently from similarly situated employees who are not part of the protected class." *Leavitt*, 407 F.3d at 412. The Court must be mindful, however, that the *McDonnell Douglas* test is "an evidentiary standard, not a pleading requirement," *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002), and "an employment discrimination plaintiff is not required to plead every fact necessary to establish a *prima facie* case to survive a motion to dismiss," *Jones v. Air Line Pilots Ass'n, Int'l*, 642 F.3d 1100, 1104 (D.C. Cir. 2011). Instead, Hylton's "claim must simply 'give the defendant fair notice of what [his] . . . claim is and the grounds upon which it rests.'" *Kangethe v. District of Columbia*, 953 F. Supp. 2d 194, 199 (D.D.C. 2013) (quoting *Twombly*, 550 U.S. at 555).

According to the FHFA, Hylton's complaint fails to satisfy even this liberal pleading standard. The Court need not decide that question, however, because the D.C. Circuit requires "a district court . . . to consider a *pro se* litigant's complaint 'in light of' all filings, including filings responsive to a motion to dismiss." *Brown*, 789 F.3d at 152. This is particularly true where, as here, the defendant "will suffer no prejudice by allowing" the *pro se* plaintiff "to, in effect,

supplement his complaint with the allegations included in his opposition." *Id.*; *see also Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999); *Anyanwutaku v. Moore*, 151 F.3d 1053, 1059 (D.C. Cir. 1998). Applying this principle, the Court concludes that Hylton's complaint, opposition brief, and the exhibits that are "attached to" those filings, *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997), provide sufficient "factual matter (taken as true) to" support Hylton's disparate treatment claims, *Twombly*, 550 U.S. at 556.

Hylton avers—or must be deemed to have averred—that he "fulfilled the mandatory requirements" for selection as a candidate for Ombudsman, but that the FHFA failed to put his name forward in the same manner as equally or less-qualified applicants because of his race, age, and/or disability. Dkt. 6-1 at 40. He further alleges that his application to the Ombudsman position received a score of 94 out of 100 from OPM but, despite this rating, he was not selected for an interview while two individuals with scores of 94 or 88 advanced to the second round of the application process. Dkt. 6 at 10. That allegation lacks detail—particularly detail about the races, ages, or disability status of his comparators—but, at this preliminary stage of the litigation, Hylton is "not required to plead every fact necessary to establish a prima facie case to survive a motion to dismiss." *Jones*, 642 F.3d at 1104. Nor does the fact that the FHFA ultimately opted to fill the Ombudsman position from the ranks of then-current "Agency Executive[s]," Dkt. 1 at 5 (Compl. ¶ 15), defeat Hylton's claims as a matter of law. Although the FHFA contends that the hiring process changed due to an agency reorganization, Hylton alleges that the change was a subterfuge used "to circumvent his selection for the position." *Id.* at 39. For present purposes, the question is not who is right about this question of fact but, rather, whether Hylton's allegations, if true, state a claim under Title VII, the ADEA, and the Rehabilitation Act that is

"plausible on its face," *Twombly*, 550 U.S. at 570.  In light of the leeway that the Court must afford a *pro se* plaintiff, *see Brown*, 789 F.3d at 152, the Court concludes that they do.

The Court will, accordingly, deny the FHFA's motion to dismiss Hylton's disparate treatment claims.

## B.    Disparate Impact

In addition to his disparate treatment claims, Hylton alleges that the FHFA's "decision to use [a] personnel procedure to re-assign an existing Agency Executive to fill the Ombudsman position" had an unlawful "disparate impact" on individuals "along the lines of a protected trait." Dkt. 1 at 5 (Compl. ¶ 15).  He argues that "the Defendant's use of reassignment of a white male executive is so obvious or predictable that comparative statistics are simply unnecessary" and that "reducing the pool of candidates for the position of Ombudsman to the existing pool of white executive employees established barriers minorities could not hope to overcome."  Dkt. 6 at 12.

Unlike a disparate treatment claim, "a disparate-impact claim challenges practices that have a 'disproportionately adverse effect on minorities'" that are "otherwise unjustified by a legitimate rationale." *Tex. Dep't. of Hous. & Cmty. Affairs v. Inclusive Cmtys Project, Inc*., 135 S. Ct. 2507, 2512 (2015) (quoting *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009)).  To establish a *prima facie* case of disparate impact, a plaintiff must demonstrate "essentially, a threshold showing of a significant statistical disparity."  *Ricci*, 557 U.S. at 587.  In most disparate impact cases, the plaintiff must then identify a particular employment practice, *Smith v. City of Jackson*, 544 U.S. 228, 241 (2005), and "show that the practice in question has caused" that disparity, *Watson v. Fort Worth Bank & Tr*., 487 U.S. 977, 994 (1988).  The standard differs somewhat, however, in Title VII cases, where the plaintiff must still show that "a particular employment practice . . . causes a disparate impact on the basis of race, color, religion, sex, or national

origin," but where the "particular employment practice requirement" is relaxed if the plaintiff can show that "the elements of [the defendant's] decisionmaking process are not capable of separation for analysis." 42 U.S.C. § 2000e-2(k)(1)(B)(i).

It is well-settled that the disparate impact theory of recovery is available under Title VII. *See Griggs v. Duke Power Co.*, 401 U.S. 424 (1971); Civil Rights Act of 1991, Pub. L. No. 102-166, § 2, 105 Stat. 1071. Although the Supreme Court has not directly addressed the issue, the same is true under the Rehabilitation Act. The Supreme Court has held that disparate impact is available under the American Disabilities with Act of 1990, *see Raytheon Co. v. Hernandez*, 540 U.S. 44, 53 (2003), and the Rehabilitation Act of 1973 "directs courts to employ the standards of the Americans with Disabilities Act," *Solomon v. Vilsack*, 763 F.3d 1, 5 (D.C. Cir. 2014). *See Senatore v. Lynch*, 225 F. Supp. 3d 24, 33 (D.D.C. 2016) (citing *Drasek v. Burwell*, 121 F. Supp. 3d 143, 153–54 (D.D.C. 2015) (disparate impact theory available under Rehabilitation Act).

The question of whether the ADEA recognizes disparate impact claims, however, is more complicated. The Supreme Court has found that the ADEA authorizes disparate impact suits against private employers. *See Smith*, 544 U.S. at 228. But "neither [the D.C. Circuit] nor the Supreme Court has addressed the question whether the ADEA authorizes disparate impact claims against *federal* employers." *Aliotta v. Bair*, 614 F.3d 556, 561 n.4 (D.C. Cir. 2010). District court decisions in this circuit have, in the main, held that disparate impact claims against the federal government are not cognizable under the ADEA. *See, e.g.*, *Anderson v. Duncan*, 20 F. Supp. 3d 42, 58 (D.D.C. 2013) (collecting cases). At least one decision, however, reached a contrary conclusion. *See Breen v. Peters*, 474 F. Supp. 2d 1, 6 (D.D.C. 2007) (concluding that the ADEA "encompasses both disparate treatment and disparate impact cases, as both methods of proof seek redress for illegal discrimination.").

For present purposes, however, that question is inconsequential because Hylton does not allege facts that, even if accepted as true, state a "plausible" claim for relief on a disparate impact theory—under any antidiscrimination statute. *Iqbal*, 556 U.S. at 678. Hylton's filings refer to "a pool of white executive employees," and states that the "reassignment of a white male executive is so obvious or predictable that comparative statistics are simply unnecessary." Dkt. 6 at 12. But "[t]o prevail on a disparate impact claim, a plaintiff must offer sufficient evidence to support a finding that the challenged policy *actually* disproportionately affected a protected class." *2922 Sherman Ave. Tenants' Ass'n v. District of Columbia*, 444 F.3d 673, 681 (D.C. Cir. 2006). "Although neither prima facie proof nor detailed factual allegations are necessary to withstand a Rule 12(b)(6) motion, . . . a complaint must nonetheless contain 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Wu v. Special Counsel*, No. 14-7159, 2015 WL 10761295, at *1 (D.C. Cir. Dec. 22, 2015) (internal citation omitted). Hylton's complaint, as supplemented by his opposition brief, "contains not a hint that he has or can obtain statistical evidence" that the FHFA's reorganization had "the disparate impact[] he claims." *Id.* at *2. Indeed, he does not identify any "other person affected by reason of" race, age, or disability by the reorganization. *Townsend v. United States*, 236 F. Supp. 3d 280, 309 (D.D.C. 2017).

Moreover, to the extent Hylton focuses his claim on the FHFA's one-time, and limited, decision to fill the Ombudsman position with a then-current "Agency Executive," he has failed to identify a "policy" sufficient to sustain a disparate impact claim. "As a general rule, a plaintiff 'cannot attack an overall decisionmaking process in the disparate impact context, but must instead identify the particular element or practice within the process that causes an adverse impact.'" *Davis v. District of Columbia.*, 246 F. Supp. 3d 367, 394 (D.D.C. 2017) (quoting *Stout*

*v. Potter*, 276 F.3d 1118, 1124 (9th Cir. 2002)).  In other words, disparate impact ordinarily "looks at the effects of policies, not one-off decisions, which are analyzed for disparate treatment."  *City of Joliet v. New West, L.P.*, 825 F.3d 827, 830 (7th Cir. 2016).  Thus, as the Supreme Court has explained, "a plaintiff challenging the decision of a private developer to construct a new building in one location rather than another will not easily be able to show this is a policy causing a disparate impact because such a one-time decision may not be a policy at all." *Tex. Dep't of Hous. & Cmty Affairs*, 135 S. Ct. at 2523; *see also Breen v. Chao*, 253 F. Supp. 3d 244, 265–66 (D.D.C. 2017).  Like the plaintiff in that hypothetical, Hylton has failed to identify any "policy" or "practice" that might even arguably have had an adverse effect on a protected group.

The Court will, accordingly, grant the FHFA's motion to dismiss Hylton's disparate impact claims.

## CONCLUSION

Defendants' motion to dismiss for failure to state a claim is hereby **GRANTED** in part and **DENIED** in part.  The Court **GRANTS** Defendant's motion to dismiss Hylton's disparate impact claims for failure to state a claim and **DENIES** Defendants' motion to dismiss Hylton's disparate treatment claims.

**SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  September 13, 2018